IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| BNP PETROLEUM CORPORATION § | Case No. 09-20206-C-11 | |
| BNP OIL & GAS PROPERTIES, LTD. § | Case No. 09-20612-C-11 | |
| *Debtors* § | Jointly Administered Under | |
| § | Case No. 09-20206 | |
| § | (Chapter 11) | |
| MICHAEL B. SCHMIDT, TRUSTEE § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | Adversary No. _____ | |
| § | | |
| PAUL BLACK § | | |
| BNP HOLDINGS, LTD § | | |
| BNP COMMERCIAL PROPERTIES, LTD § | | |
| PBF INVESTMENTS, LTD § | | |
| PAGENERGY COMPANY LLC § | | |
| TSE EUITIES I, LLC § | | |
| TSE EQUITIES COMPANY, LTD § | | |
| BNP MANAGEMENT LLC § | | |
| *Defendants* § | | |

### TRUSTEE'S PETITION FOR DECLARATORY JUDGMENT

Michael B. Schmidt, Chapter 7 Trustee (hereafter "Petitioner") petitions the Court for a declaration as set out below.

### I. JURISDICTION AND PARTIES

1.1  This Court has jurisdiction of this matter pursuant to 28 USC § 157 and this matter is a core proceeding.

1.2  The following are persons who have a claim or interest that would be affected by the declaration (hereafter collectively referred to as "Defendants"):

   A.  Defendant, Paul Black, individually and as principal of the Black Entities listed below, and may be served by serving his counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

   B.  BNP Holdings, Ltd is a limited partnership and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

  C. BNP Commercial Properties, Ltd is a limited partnership and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

  D. PBF Investments, Ltd is a limited partnership and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401.

  E. Pagenergy Company LLC is a limited liability company and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401.

  F. TSE Equities I, LLC is a limited liability company and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

  G. TSE Equities Company, Ltd is a limited partnership and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

  H. BNP Management LLC is a limited liability company and may be served by serving its counsel, James R. Harris, Harris & Greenwell, 800 N. Shoreline Blvd., Ste. 2800-S, Corpus Christi, TX 78401

## II. FACTS

  2.1 In 2000, Paul Black bought George Placke's interests in various jointly owned corporations and partnerships, and then subsequently sold 40% of those interests to Seashore for $1 million. After the sale, Mr. Black owned 60% and Seashore owned 40% of those interests which were held in the "Jointly Owned Entities." The Jointly Owned Entities included BNP Oil & Gas Properties, Ltd ("Properties"); BNP Petroleum Corporation ("Petroleum"), BNP Commercial Properties ("Commercial") , RPH Financial Investment Corporation ("RPH"), BNP Holdings, Ltd. ("BNP Holdings"), TSE Equities I, LLC ("TSE"), Pagenergy Company, LLC. ("Pagenergy"), BNP Management, LC, ("BNP Management") and PBF Investments, Ltd. ("PBF").  Seashore is a trust whose beneficiary is Toby Shor. At the time, and until his termination in approximately July 2007, Kenton McDonald was the Trustee for Seashore. Between 2000 and 2007, Seashore interacted with Paul Black about Jointly Owned Entities through Kenton McDonald (and Ms. Shor). In 2007, Kenton McDonald resigned as the Trustee of Seashore and appointed Toby Shor as successor Trustee.  At the time Seashore acquired its interests, the Jointly Owned Entities included Properties, Petroleum and Commercial. The Jointly Owned Entities also included RPH. The Jointly Owned Entities were beneficially owned by Seashore (40%) and Paul Black (60%) through a series of limited partnerships and corporations.5 RPH and Petroleum were owned directly by Seashore (40%) and Paul Black (60%). The 99% limited partnership interests in Properties and Commercial were owned by BNP Holdings (99%

2

limited partner). Pagenergy, the general partner of Properties, owned one percent of Properties. TSE, the general partner of Commercial, owned one percent of Commercial. Pagenergy and TSE were in turn owned by Seashore and Paul Black in their proportionate shares. BNP Holdings was owned by BNP Management (1% general partner), Seashore (39.6% limited partner) and PBF (59.4% limited partner). PBF was owned by Paul Black. The Organizational Structure chart is attached as Exhibit I to the Examiner's Report.

2.2   Between October 2002 and December 31, 2006, Paul Black received approximately $3,000,000 in additional transfers for his personal benefit.  The Examiner performed a review of the Land &Bay Gauging (L & B) general ledger to trace the funds transferred from Petroleum and to determine the disposition of these funds. The records indicate that within a matter of days of the receipt of each transfer from Petroleum, L&B made significant distributions to Paul Black. From 2006 to October 2009, the total amount of distributions made from L&B to, or for the benefit of, Mr. Black was approximately $5.1 million. The documentation substantiating this finding is attached to the Examiner's Report as Exhibit J.

2.3.   The Financials for Petroleum show for each of the years 2004 through 2008, its liabilities exceeded its assets.  The best years were 2005 and 2006 when its liabilities exceeded its assets by $644,000 and $783,000 respectively.  In the other years liabilities exceeded assets by $1.2 million to as high as $2.7 million.   The Financials for Properties show for the year 2004 its assets exceeded its liabilities, but for the years 2005, 2006, 2007 and 2008, liabilities exceeded assets $7. 7 million, $10.6 million, $16.2 million and $6.6 million respectively. Debtors were insolvent at the time of the transfers which are the subject of this Adversary.

2.4   An Arbitration was commenced between Toby Shor, the Shor Entities on one hand and Paul Black and the Jointly Owned Entities on the other hand.  In the Arbitration, Seashore/ Shor in their pleadings set forth and admit the following facts: "Paul Black <u>looted the Joint Entities</u> and he has done so with impunity, and without regard to the litany of promises and obligations he owes Seashore, both as fiduciary and contractually under the various agreements he has with <u>Seashore, his partner</u>.  Seashore/Shor define "<u>Joint Entities</u>" as BNP Holdings, Ltd., BNP Commercial Properties, Ltd.; BNP Oil & Gas Properties, Ltd.; Pagenergy Company, LLC,TSE Equities I, LLC ;TSE Equities, Company, Ltd.;500 Water St. Property, LLC;500 N. Water St. Property, I LLC. They go further to say:" The <u>Joint Entities are essentially a group of entities set up as jointly owned by Seashore and by PBF.</u>" "The <u>Joint Entities</u> are also primarily the entities from which funds have been <u>defalcated - directly and indirectly - by Black</u>."  Because Paul Black separately owned companies that Toby Shor did not know about, or that were not Joint Entities, it was easy for Paul Black to <u>steal</u> from Seashore - so the wrongdoing often took the <u>form of intercompany transfers</u> through either BNP Petroleum (the operating company, which was owned solely by Paul Black after the Restructure Agreement) or Land & Bay Gauging (a gauging company in which Seashore owns no interest). As the Bankruptcy Examiner noted, Paul Black had virtually no accounting controls in place to prevent these abuses from occurring. And why would he - it was never his intention to prohibit such conduct. From April 2007 (while Toby was battling cancer) through October 2009 Paul Black funnelled over $5 million from Land & Bay directly to his own personal accounts. <u>Where did Land & Bay get the money? From BNP Petroleum, who in turn got it from BNP Oil & Gas.</u>

3

Strangely, Mr. Black cannot recall what he did with most of the $5 million he transferred to himself, or why the "distribution" was made to himself. In addition to the $5 million transferred from to Land & Bay with no pretense of a justification, Black caused millions more to be paid to Land & Bay for purported valuable services Land & Bay was supposedly providing to Petroleum (and being charged largely to BNP Oil & Gas). Of course there are no written agreements for the work performed by Land & Bay for BNP Petroleum, but the money continued to flow. Remarkably, BNP Petroleum, which was supposed to be a pass-through (operating) entity, somehow ended up with over $16 million of unpaid vendor claims and royalty payments as of May 2009, including unpaid taxes, unpaid royalties, and unpaid third-party debt. Paul Black's former CFO (who has since hired a criminal defense attorney to represent him<u>) admits that among the reasons he quit was the fact that Paul Black would loot the companies for his own personal use, while legitimate third party vendors were left unpaid.</u> In addition to wrongfully transferring partnership money to himself, Paul Black also saw fit to transfer money to his friends and family, including loans to his dad - none of which appear to have been documented as loans in the real time. Paul Black also transferred interests in oil and gas properties to his girlfriend, Wendy Bennett, his brother, and father, all to the detriment of, and without approval of Seashore, <u>and not in return for any cash consideration to the partnership."</u>

  2.5 The Arbitration Panel, on August 17, 2010, based on these Seashore/Shor pleadings and evidence presented to them in trial, found: "<u>the evidence presented at the Arbitration Hearing</u> <u>clearly and convincingly established that Paul Black treated the entities jointly-owned with Seashore as his own. The evidence established that Paul Black, intentionally and over a lengthy period of years, extracted millions of dollars from the jointly-owned entities for his own personal use and benefit. Paul Black transferred substantial sums of money to companies wholly owned by himself. He used company credit cards of the jointly owned entities to pay personal expenses, and instructed company employees to transfer funds from the business as necessary to prevent his personal checking account to be overdrawn. He made other improper transfers. He continued to make transfers for his own benefit even after some of his improper transfers and expenditures were discovered and he had signed a written agreement expressly prohibiting such transfers in the future. Mr. Black continued to make such transfers even when the entities lacked funds to pay their own creditors and obligations. As a fiduciary, Mr. Black had the burden to establish the fairness of all such transactions; based on the evidence presented at the Arbitration Hearing, he failed to do so"</u>.

  2.6 The Arbitration Panel also expressly found: "Based on the evidence presented, <u>the Panel finds and determines that Mr. Black and PBF Investments, Ltd. and the general partner entities BNP Management LC, Pagenergy Company, LLC and TSE Equities I, LLC owed fiduciary and other duties</u> to Seashore and <u>breached those duties by wrongly taking and permitting or effecting excessive distributions from the jointly-owned entities, making improper transfers and misusing 'company funds, all resulting in damage to Seashore.</u>" They also found: "<u>The Panel finds and determines that Mr. Black and PBF Investments, Ltd., BNP Management LC, Pagenergy Company LLC, TSE Equities I LLC, BNP Holdings Ltd., BNP Commercial Properties, Ltd. and BNP Oil & Gas Properties, Ltd engaged in fraud</u> and. fraudulently induced Seashore to make an initial and subsequent investments in the jointly-owned entities and to enter into the Sixth Amendment to Promissory Note (as well as earlier versions of the note), the Short Term Note and Restructure Agreement <u>and hid or attempted to hide transfers to</u>

benefit Mr. Black." The Panel also awarded damages for this fraud of $21,389,385.00, and "an additional $2,454,281.00 to Respondent Seashore Investments Management Trust for fraud committed by Mr. Black and PBF Investments, Ltd., BNP Management LC, Pagenergy Company LLC, TSE Equities I LLC, BNP Holdings Ltd., BNP Commercial Properties, Ltd. and BNP Oil & Gas Properties, Ltd. <u>in making additional improper transfers to Mr. Black."</u>

      2.7    It is clear, from the evidence presented at the arbitration trial and the actual arbitration award, that Paul Black, Individually and on behalf of Black entities and/or the joint entities and/or the jointly owned entities (hereinafter collectively called Black entities), utilized various corporate and/or limited partnership entities to perpetrate fraud for personal gain. The Black entities were organized and operated in such a manner as to be a conduit of the debtors in order for Paul Black to pursue and eventually accomplish personal financial gain. As found by the Arbitration Panel, Paul Black, Individually and on behalf of the Black entities pursued a course of conduct wherein various corporate and/or limited partnership structured entities were not in fact being operated in their intended manner and/or legal capacity but were simply being used for the personal and individual financial benefit of Paul Black. Furthermore, Paul Black and the Black entities not only was using his various corporate and/or limited partnership entities for no legitimate purpose but never intended to reimburse the debtors all of the financial abuse that had resulted from his personal gain thus establishing a classic "alter ego" and/or "single business enterprise" to the detriment of not only the debtors but their creditors. Although Paul Black, Individually and on behalf of the Black entities attempted to maintain that each of such entities were separate in nature, *i.e.,* parent corporation, subsidiary corporation, general partner, limited partner, etc., the evidence established and accepted by the Arbitration Panel was that the Black entities were nothing more than a facade and that all such Black entities were merely shells and, under Texas law, "alter egos" and/or "single business enterprise" of the debtors and such conduct was pursued, controlled and influenced by Paul Black, Individually. Therefore, as a result of the Arbitration Panel's award and findings stated therein, Trustee hereby seeks declaratory relief establishing that Paul Black and the Black entities as referred herein are legally "alter ego" and/or "single business enterprise" of the debtors and thus confirming the findings of the Arbitration Panel as set out in the arbitration award.

      2.8    This Court by Order entered November 9, 2010 (doc #934) lifted the automatic stay to permit Seashore to reduce this arbitration award to a final judgment and to pursue collection outside of bankruptcy of such final judgment against Paul Black and all jointly owned entities, except to oil & gas. Mr. Kaim, counsel for Seashore, announced on the record after entry of this Order that they would seek immediate collection of this final judgment against Paul Black. On information and belief the Trustee avers that collection efforts will immediately proceed against the jointly owned entities as well, in spite of Mr. Kaim's announcement limited to Mr. Black.

### III. DECLARATORY RELIEF

      3.1    Trustee requests that this Court declare the following:

    A.    Paul Black, Individually and the Black entities as defined herein are the "alter ego" of the debtors;

    B.    Paul Black, Individually and the Black entities as defined herein are the "single business enterprise" of the debtors;

    C.    An award of reasonable and necessary attorney's fees that will be equitable and just.

WHEREFORE, Trustee requests that all persons entitled to be cited herein appear and answer and that on final hearing, Trustee have the following:

    A.    A declaration of Paul Black, Individually and the Black entities as defined herein are the "alter ego" of the debtors;

    B.    A declaration of Paul Black, Individually and the Black entities as defined herein are the "single business enterprise" of the debtors;

    C.    Reasonable and necessary attorney's fees;

    D.    Costs of suit; and,

    E.    All other relief, in law or in equity, to which Trustee may be entitled.

Respectfully submitted,
LAW OFFICES OF MICHAEL B. SCHMIDT

By:    /S/MICHAEL B. SCHMIDT
Michael B. Schmidt
State Bar No. 17775200
555 N. Carancahua, Ste. 1550
Corpus Christi, Texas 78401
361.884.9949 - Telephone   361.884.6000 - Fax

Michael S. Lee
State Bar No. 12129700
THE LEE FIRM
A PROFESSIONAL CORPORATION
615 N. Upper Broadway, Suite 708
Corpus Christi, Texas 78477
361.882.4444 – Telephone  361.882.7844 - Fax

ATTORNEYS FOR PLAINTIFF,
MICHAEL B. SCHMIDT, TRUSTEE